## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| DANIELLE TODOSIJEVIC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:04 CV 260 |
| | ) | |
| COUNTY OF PORTER, INDIANA; | ) | |
| DAVID REYNOLDS, individually | ) | |
| and in his official capacity as Sheriff | ) | |
| of Porter County; | ) | |
| BRIAN GEESE, individually and in | ) | |
| his official capacity as President of the | ) | |
| Porter County Commissioners; and | ) | |
| DEAN PONTJERIS, individually and | ) | |
| in his official capacity as Porter | ) | |
| County Warrant Officer, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM and ORDER

This matter is before the court on defendants' motion for summary judgment

(docket # 20). Plaintiff filed suit on July 12, 2004, alleging that a Porter County warrant

officer conducted an unreasonable search of her home in violation of the constitutions

of the United States and the state of Indiana. (Compl. 1.) In a previous order, the court

dismissed the federal constitutional claims against defendants Brian Geese, in his

individual and official capacity, and Sheriff Reynolds, in his individual capacity. (Order,

docket # 24.) The issues remaining to be resolved in this case are: (A) federal

constitutional claims against defendants Porter County, Sheriff Reynolds in his official

capacity, and Officer Pontjeris in his individual and official capacities; and (B) state

constitutional claims against all defendants. The court, after careful and thorough

consideration of the briefs and accompanying evidence, finds that the undisputed facts read most favorably to plaintiff do not establish any federal or state constitutional violations by any defendant in this case. Accordingly, defendants' motion is **GRANTED.**

## I. BACKGROUND

Plaintiff Danielle Todosijevic's first encounter with defendant Officer Dean Pontjeris occurred in June of 2002, when Pontjeris arrived at her residence, 1775 Broadacre Road in Crown Point, Indiana, looking for Charles Romaine. Pontjeris, a fifty-seven year old warrant officer with eight years of experience in the position, had a warrant for Charles' arrest on charges of battery and failure to pay child support. (Warrant, Defs.' Mem. Supp. Mot. Summ. J., Ex. B.) Danielle, a resident of the state of Indiana, was inside her home with two other residents of 1775 Broadacre: Danielle's sister, Jackie, who had an on-and-off romantic relationship with Charles, and Eugene Sheffer.

There is some dispute over precisely what was said between Pontjeris and the residents on that day. Pontjeris claims that Jackie told him that Charles was staying there and Eugene told him that Charles lived there. (Police Narrative, Pl.'s Response, Ex. 5 [hereinafter "Narrative"], at 1; Dep. of Officer Pontjeris, Defs.' Mem. Supp. Mot. Summ. J., Ex. C [hereinafter "Pontjeris Dep."], at 36-37.) However, Jackie and Eugene both claim that they told Pontjeris exactly the opposite– that Charles did not and had

2

not ever lived at 1775 Broadacre. (Sheffer Aff. 1; Jackie Todosijevic Aff. 1.) Danielle

testified that Eugene later told her that he had informed Pontjeris that Charles could be

found at the Valparaiso Motel. (Dep. of Danielle Todosijevic, Defs.' Mem. Supp. Mot.

Summ. J., Ex. D [hereinafter "Todosijevic Dep."], at 59.) Shortly after conversing with

Sheffer, Pontjeris left the premises.

Pontjeris continued to pursue the illusive Charles. He received numerous tips as

to Charles' whereabouts. The Valparaiso Police Department had previously stated that

Charles was staying at 1775 Broadacre. (Narrative 1.) An informant dubbed "Shane-

Probation" in Pontjeris' field notes informed Pontjeris that Charles was staying with a

female named Jackie in Valparaiso driving a green Lincoln Continental. (Narrative 1.) A

person Pontjeris described as Charles' relative told Pontjeris that Charles recently

visited her home with a female driving a Lincoln. (Narrative 2.) Pontjeris' notes also

indicate that another acquaintance of Charles, Rachel Nevels, informed Pontjeris that

Charles was living with a friend and was with Jackie. (Narrative 4.) Other information

collected by Pontjeris suggested that Charles was staying with a relative in Wheatfield,

Indiana, and with a friend in La Cross, Indiana. (Narrative 2, 5.) On August 19, 2002,

Pontjeris learned that Romaine was looking for money and was planning to leave the

area. (Narrative 2.)

Danielle's second encounter with Pontjeris was during the early morning hours

of August 20, 2002. Pontjeris testified that on that date he drove to 1775 Broadacre to

look for Charles. (Narrative 6.) He noticed that a Lincoln Continental was parked in the

driveway. (Narrative 6; Pontjeris Dep. 25.) Pontjeris testified that he approached the house, knocked on the front door, and stated "Porter County Sheriff's Department" two times; he also testified that he called out "Jackie, are you home?" (Pontjeris Dep. 28.) Pontjeris described his actions as "very loud." (Pontjeris Dep. 29.) Pontjeris further testified that after he knocked and called out, he heard a noise from inside the house but received no response at the door. (Pontjeris Dep. 27, 30, 33.) He also noticed a light on upstairs. (Pontjeris Dep. 28.) Pontjeris ordered his fellow officer to go around to the back of the house "just in case somebody runs out the back." (Pontjeris Dep. 30.)

Pontjeris claims that after knocking hard on the door, the door opened. (Pontjeris Dep. 28.) Pontjeris could hear a dog inside. (Pontjeris Dep. 29.) Pontjeris then entered the residence and fixed the latch on the screen door so that it would remain open. (Pontjeris Dep. 28.) He testified that he proceeded to state "Porter County Sheriff's Department" and call for Jackie. (Pontjeris Dep. 30-31.) Pontjeris walked up the stairs leading to the ground level of the house in the direction of the light he saw from outside, continuing to announce "Porter County Sheriff's Department." (Pontjeris Dep. 31, 33.) Pontjeris reached a door to a room and knocked, but did not enter the room. (Pontjeris Dep. 31.) The dog stopped barking. (Pontjeris Dep. 33.) Pontjeris realized he no longer had radio communication with his fellow officer, and proceeded back down the stairs to yell out to him that someone was definitely in the room. (Pontjeris Dep. 34.)

Meanwhile, Danielle was upstairs asleep. (Todosijevic Dep. 67, 115.) Danielle testified that she had no doorbell; she also testified that she was sleeping near a box fan

and that if anyone was knocking on the front door she "wouldn't have heard it." (Todosijevic Dep. 115.) Eventually Danielle heard the knock at her bedroom door and went into the hallway in her bathrobe, where she encountered Pontjeris making his descent back down the stairs. (Todosijevic Dep. 67-68.) According to Danielle, Pontjeris greeted her with "Good morning, Jackie." (Todosijevic Dep. 70.) Danielle then informed Pontjeris that she was not Jackie. (Todosijevic Dep. 70.) She asked Pontjeris why he was inside her home. (Pontjeris Dep. 34; Todosijevic Dep. 71.) Pontjeris stated that he was with the sheriff's department, displayed his badge, and explained that he was looking for Charles. (Pontjeris Dep. 34-35; Todosijevic Dep. 70-71.) Pontjeris also informed Danielle that several informants, including Rachel and Larry Nevels, told him that Charles was at 1775 Broadacre. (Pontjeris Dep. 34; Todosijevic Dep. 91, 114.)

According to Pontjeris, Danielle indicated that she did not believe that Pontjeris should be inside her home, that Jackie had moved out, and that Charles "left." (Pontjeris Dep. 34-36.) Danielle claims that she asked Pontjeris whether he had a warrant to be in her home, received no response, and was instead bombarded with numerous questions about Charles' whereabouts. (Todosijevic Dep. 72.) Pontjeris claims he told Danielle he would make a note of the fact that neither Jackie nor Charles lived there anymore, and left. (Pontjeris Dep. 35.) On August 20, 2002, Pontjeris possessed only an arrest warrant for Charles Romaine. He did not have a search warrant for 1775 Broadacre. The parties do not now dispute that Charles was not in fact a resident of 1775 Broadacre on August 20, 2002.

On July 12, 2004, Danielle, the plaintiff in this case, filed a complaint alleging that Pontjeris violated her federal and state constitutional rights by entering her home on August 20, 2002, without probable cause or a warrant. Plaintiff also named Porter County, David Reynolds, the county sheriff, and Brian Geese, the president of the county commissioners, as defendants. (Compl. ¶¶ 1, 2, 14.) Plaintiff contends that Reynolds, Geese, and Porter County are responsible for Pontjeris' actions because Pontjeris was acting in accordance with a policy set by either the county or the sheriff's department. (Compl. ¶ 4.) Plaintiff argues that the defendants are liable for lost wages, emotional distress, humiliation, and embarrassment that occurred as a result of Pontjeris' actions. (Compl. ¶ 14.)

## II. LEGAL STANDARD

The FEDERAL RULES OF CIVIL PROCEDURE mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). RULE 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is

6

mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986); *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 234 (7th Cir. 1995); *Doe,* 42 F.3d at 443.

## III. ANALYSIS

### A. Federal constitutional claims

#### 1. Claims against Officer Pontjeris in his individual capacity

Plaintiff first argues that Pontjeris, in his individual capacity, violated her constitutional rights as protected by 42 U.S.C. § 1983. In the context of a § 1983 action, "[a]n official who is sued in his or her personal capacity can only be held liable for his or her individual wrongdoing." *Wilson v. Civil Town of Clayton,* 839 F.2d 375, 383-84 (7th Cir. 1988). Section 1983 does not recognize the doctrine of superiors' liability, *McKinnon*

*v. City of Berwyn,* 750 F.2d 1383, 1390 (7th Cir. 1984), or respondeat superior. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978). An official will only be liable, in her individual and personal capacity, if she has "caused or participated in" the violation of plaintiff's constitutional rights. *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir. 1983). In this case, plaintiff contends that Pontjeris caused or participated in the violation of her Fourth and Fourteenth Amendment rights by: (a) entering her home without a search warrant for 1775 Broadacre, and (b) entering her home without following proper knock-and-announce protocol. These two issues relate to a single reasonableness inquiry under the Fourth Amendment, *see Wilson v. Arkansas,* 514 U.S. 927, 929 (1995), but for the sake of clarity, the court addresses each issue separately in turn below.

### *a. Warrantless entry of plaintiff's home*

Plaintiff's first allegation is that Officer Pontjeris entered her home without a proper warrant. Indeed, Pontjeris did not have a search warrant for 1775 Broadacre. Instead, Pontjeris possessed only an arrest warrant for Charles Romaine. For this reason, the proper inquiry in this case is whether Pontjeris was justified in entering 1775 Broadacre armed only with an arrest warrant for Charles Romaine, where Charles Romaine was not a resident of the home. As explained below, the answer to this question depends on whether Pontjeris reasonably believed that Charles was a resident of 1775 Broadacre on August 20, 2002, and that Charles was present at the residence at that time.

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV; *Doe v. Heck,* 327 F.3d 492, 509 (7th Cir. 2003). Entry into a residence without a warrant is presumptively unreasonable. *See United States v. Rivera,* 248 F.3d 677, 680 (7th Cir. 2001). However, in *Payton v. New York,* the Supreme Court stated that an arrest warrant implicitly carries with it the limited authority to enter the dwelling of the subject of the arrest warrant when there is reason to believe that the suspect is inside. 445 U.S. 573, 602-03 (1980). However, in *Steagald v. United States,* the Supreme Court further refined the rule by establishing that an arrest warrant does not carry with it the authority to enter the homes of third persons, and a separate search warrant is necessary to effectuate an arrest warrant for a person staying at a third person's residence. 451 U.S. 204, 213-14 (1981). *Payton* clearly established that, in either instance, there must be reason to believe that the suspect is inside the residence, whomever it may belong to. But one question still remained after *Payton* and *Steagald*: if an officer, armed with an arrest warrant for one individual, may only lawfully enter *that* individual's home without an additional search warrant, how sure must an officer be that the home he is entering belongs to the individual named in the arrest warrant?

The Courts of Appeals have since attempted to synthesize the holdings of *Payton* and *Steagald* to answer this question. The Seventh Circuit has not definitively ruled on the subject. However, the majority of circuits addressing this issue have required that police officers possess a "reasonable belief" that a suspect named in an arrest warrant resides at the home to be searched. *United States v. Lauter,* 57 F.3d 212, 215 (2d Cir. 1995);

*United States v. Lovelock,* 170 F.3d 339, 343 (2d Cir. 1999), *cert. denied,* 528 U.S. 853 (1999);

*United States v. Edmonds,* 52 F.3d 1236, 1248 (3d Cir. 1995), *vacated in part on other*

*grounds,* 52 F.3d 1236, 1251 (3d Cir. 1995), *cert. denied,* 519 U.S. 927 (1996); *United States v.*

*Route,* 104 F.3d 59, 62 (5th Cir. 1997), *cert. denied,* 521 U.S. 1109 (1997); *United States v.*

*Risse,* 83 F.3d 212, 216 (8th Cir. 1996); *Valdez v. McPheters,* 172 F.3d 1220, 1225 (10th Cir.

1999); *United States v. Bervaldi,* 226 F.3d 1256, 1259, 1263-64 (11th Cir. 2000); *United States*

*v. Magluta,* 44 F.3d 1530, 1535 (11th Cir. 1995), *cert. denied,* 516 U.S. 869 (1995). Several

district courts under the Seventh Circuit's purview have also employed the "reasonable

belief" rule. *Blake v. Peterson,* No. 94 C 6561, 1995 WL 360702, at *4 (N.D. Ill. June 14,

1995) ("[T]he clearly established law at the time of the raid . . . was that, absent exigent

circumstances, an entry into a dwelling based only on an arrest warrant is lawful only if

the government agents have a *reasonable belief* both that the dwelling is the residence of

the person named in the warrant and that the person is at home at the time of the

execution of the warrant.") (emphasis added); *Harasim v. Kuchar,* 702 F. Supp. 178, 180-

81 (N.D. Ill. 1988) ("Summary judgment is only appropriate if the undisputed facts

show both that there was a *reasonable basis for believing* Andy resided at 3749 W. 70th

Place and reason to believe he was present at 7:00 a.m. on March 14, 1986.") (emphasis added).

Only the Ninth Circuit has employed a higher knowledge standard. In *United*

*States v. Harper,* the court held that "the police may enter a home with an arrest warrant

only if they have *probable cause* to believe the person named in the warrant resides

there." 928 F.2d 894, 896 (9th Cir. 1991) (emphasis added). However, given *United States*

*v. Albrektsen,* 151 F.3d 951, 954 (9th Cir. 1998), and *Perez v. Simmons,* 998 F.2d 775, 776

(9th Cir. 1993), it is not clear whether *Harper* is still the rule even in the Ninth Circuit.

*See Valdez v. McPheters,* 172 F.3d 1220, 1225 n.1 (10th Cir. 1999) ("The actual status of law

in the Ninth Circuit is open to question. In *United States v. Albrektsen,* the court recently

cited with approval both *Route* and *Risse* for the proposition that officers executing an

arrest warrant must have 'some reason to believe that the defendant might live at and

be present within the premises' entered. The court makes no mention of the existence of

any higher standard of knowledge."); *State v. Miller,* 777 A.2d 348, 359-60 (N.J. Super.

A.D. 2001) (questioning whether the Harper rule is still the prevailing standard in the

Ninth Circuit after *Albrektsen*).

    The Supreme Court has stated that "[t]he touchstone of the Fourth Amendment is

reasonableness." *Florida v. Jimeno,* 500 U.S. 248, 250 (1991). Further, what is "assured by

the Fourth Amendment . . . is not that no government search of his house will occur

. . . but that no such search will occur that is 'unreasonable.'" *Illinois v. Rodriguez,* 497 U.S.

177, 183 (1990). Accordingly, the court is persuaded that the proper rule to apply is the

"reasonable belief" rule adhered to by the Second, Third, Fifth, Eighth, Tenth, and

Eleventh Circuits, not the "probable cause" rule that was at one time advanced by the

Ninth Circuit. The inquiry is therefore twofold: (1) did Pontjeris reasonably believe that

1775 Broadacre was Charles' residence, and (2) did Pontjeris reasonably believe that

Charles was present at 1775 Broadacre? The reasonableness of an officer's belief is

evaluated under a totality of the circumstances test, *Magluta,* 44 F.3d at 1535, and is a

mixed question of law and fact. *Risse,* 83 F.3d at 215. In this case, according to plaintiff,

"it was unreasonable to believe that Romaine was a resident at 1775 Broadacre" and

"Pontjeris had no reliable information that Romaine was at 1775 Broadacre." (Pl.'s

Response 6-7.) Not surprisingly, defendants argue the reverse. (Defs.' Mem. Supp. Mot.

Summ. J. 8.)

     The court finds that the first prong of the test should be resolved in favor of the

defendants. The undisputed facts show that as Pontjeris collected different information

from numerous informants as to Charles' whereabouts, methods of transportation, and

the company he kept, a common theme emerged: Jackie, Lincoln Continental, 1775

Broadacre. For example, Pontjeris' sworn, written police narrative indicates that in June

of 2002, "VPD [the Valparaiso Police Department]" stated that Charles was staying at

1775 Broadacre. (Narrative 1.) The court finds it highly persuasive that Pontjeris relied

on information he received from a local police department as to a suspect's residence. *See*

*Lauter,* 57 F.2d at 215-16 (reliability of confidential informant who provided tip

considered important factor in establishing that officer's belief was reasonable). Pontjeris

also received information from several sources that Charles was closely associated with

Jackie, and it was not unreasonable to believe that Charles would be living at what

Pontjeris believed was also Jackie's residence. *See Bratton v. Toboz,* 764 F. Supp. 965, 972

(M.D. Pa. 1991) (officer's belief as to suspect's residence was reasonable based on

anonymous tip and the suspect's "close relationship" with the homeowners). Further,

Pontjeris testified at his deposition that individuals whom he believed were Charles'

relatives, as well as another source dubbed "Shane-Probation," told him that Charles was traveling in a Lincoln Continental. (Pontjeris Dep. 25-26; Narrative 1.) Pontjeris described in his narrative that "[a] Lincoln Continental was in the driveway" of 1775 Broadacre on August 20, 2002. (Narrative 6.) Other courts have considered the presence of a suspect's automobile to be an important fact in assessing the reasonableness of an officer's determination of where a suspect resided. *See, e.g., Bervaldi,* 226 F.3d at 1265-66 (considering persuasive fact that suspect's car was seen in front of house six months prior).

The court notes that it is disputed whether Jackie and Eugene told Pontjeris in June of 2002 that Charles did not live there. (*See* Sheffer Aff. 1; Jackie Todosijevic Aff. 1; Pontjeris Dep. 16-17, 36-37.) Therefore, at this point the court will construe this fact in favor of plaintiff and assume that Eugene and Jackie did tell Pontjeris at that time that Charles did not live there. Nonetheless, the court still cannot find that Pontjeris was unreasonable in his belief that Charles lived at 1775 Broadacre on August 20, 2002. Jackie was romantically connected to Charles, and Eugene rented part of 1775 Broadacre along with Jackie and plaintiff. (*See* Jackie Todosijevic Aff.; Sheffer Aff.) Pontjeris could have reasonably been suspicious of their truthfulness and formed a reasonable belief that Charles' residence was 1775 Broadacre.

Ultimately, the issue is not where Charles in fact resided, nor is it whether Pontjeris knew with certainty or had probable cause to believe that 1775 Broadacre was Charles' residence. Rather, the issue is whether Pontjeris possessed a *reasonable* belief as

13

to Charles' residence. *Risse,* 86 F.3d at 216 ("[T]he officers' assessment need not in fact be correct; rather, they need only 'reasonably believe' that the suspect resides at the dwelling to be searched and is currently present at the dwelling."). The court finds that the circumstances of this case indicate that Pontjeris was reasonable in believing that 1775 Broadacre was Charles' residence on August 20, 2002.

The second part of the *Steagald*-derived reasonableness analysis should also be resolved in defendants' favor. Pontjeris testified that he heard noises coming from inside the house. (Pontjeris Dep. 28.) Pontjeris also saw a light on upstairs. (Narrative 6.) A reasonable officer might believe that the house was therefore not empty, but that its residents were home. *See Magluta,* 44 F.3d at 1538 (considering persuasive fact that porch lights were on in determining that officer was reasonable to believe suspect was present); *Smith v. Tolley*, 960 F. Supp. 977, 988-89 (E.D. Va. 1997) (same, interior lights). Further, numerous courts have found that a suspect's presence may be suggested by the presence of the suspect's automobile. *See, e.g., Magluta,* 44 F.3d at 1537-38; *United States v. Morehead,* 959 F.2d 1489, 1496 (10th Cir.1992); *United States v. Beck,* 729 F.2d 1329, 1331-32 (11th Cir.1984); *United States v. Miles,* 82 F. Supp. 2d 1201, 1207 (D. Kan. 1999). Pontjeris had received information that Charles' mode of transportation was a Lincoln Continental and Pontjeris witnessed what he believed was a Lincoln Continental in the driveway on August 20, 2002. Accordingly, an objectively reasonable officer in Pontjeris' position could conclude that Charles was not out and about, but rather inside 1775 Broadacre. Thus, the court finds that the facts read in a light most favorable to plaintiff

14

show that Pontjeris was objectively reasonable in believing that Charles, the subject of the arrest warrant, was present at 1775 Broadacre on August 20, 2002.

For these reasons, the court is satisfied that Pontjeris' entrance into 1775 Broadacre on August 20, 2002, armed only with an arrest warrant for Charles Romaine, but not a search warrant for the residence, was reasonable under both prongs of the *Steagald*-derived reasonableness test. Accordingly, the court concludes that the facts read most favorably to plaintiff establish that Pontjeris' entry was made pursuant to his implicit authority to enter what he reasonably believed was the residence of the subject of an arrest warrant. *See Payton,* 445 U.S. at 602-03. Because defendants have met their initial burden on this summary judgment motion as to this issue, in order to survive summary judgment plaintiff must show that there exists a genuine issue of material fact warranting trial. Below, the court addresses each of plaintiff's various arguments that there are factual questions that must be resolved to determine whether Pontjeris acted reasonably that should prevent the court from granting summary judgment.

First, plaintiff points out that while Pontjeris claims that the residents of 1775 Broadacre told him that Charles lived there, Eugene and Jackie have sworn that they told him the opposite. (Pl.'s Response 3, 8.) A comparison of Jackie and Eugene's affidavits to Pontjeris' deposition reveals that this is indeed a disputed fact. However, the resolution of that fact is not material because, contrary to plaintiff's argument, it is not determinative of the issue of whether Pontjeris reasonably believed that Charles lived there. As stated above, even assuming Eugene and Jackie did make such statements to

Pontjeris, Pontjeris could have reasonably questioned their credibility and motives for making such statements.

Second, plaintiff claims that there is a dispute as to whether and when Charles and Jackie were actually dating or spending time together, and that this fact goes towards whether Pontjeris' entrance into the residence was reasonable. (Pl.'s Response 3-4.) However, under the *Steagald*-derived reasonableness test, the issue is not whether Pontjeris was correct or incorrect in his belief that Charles and Jackie were dating or lived together, but whether Pontjeris' belief that Charles was a resident of 1775 Broadacre, even if incorrect or based on incorrect information about Charles and Jackie's relationship, was reasonable. Thus, pointing out that the facts were not as Pontjeris believed them to be does not advance plaintiff's argument. Even if reality and Pontjeris' beliefs did not match up, this is not a "dispute" of material fact that would make summary judgment inappropriate.

Plaintiff also argues that on August 20, 2002, the car in the driveway was Eugene Sheffer's 1976 Lincoln Towncar with handicap plates, not the Lincoln Continental that Pontjeris was looking for. (Pl.'s Response 7.) Plaintiff claims that this creates a factual dispute as to whether Pontjeris reasonably believed Charles was a resident or present at the residence because the car in the driveway was so different from the car that Pontjeris was looking for that no reasonable officer with years of experience could assume they were the same. (Pl.'s Response 7-8.) This argument fails for two reasons. First, Eugene's affidavit only indicates that his car was parked in the driveway on June 20, 2002; no

16

mention is made of August 20, 2002, whatsoever. (*See* Sheffer Aff. 1.) Second, even if

plaintiff's argument were factually supported, it does not demonstrate that a material

fact is in dispute. Rather, it appears to be an argument that, given the facts, Pontjeris'

belief was objectively unreasonable. But there is no evidence that Pontjeris was ever told

about or knew the license plate or the year of the car Charles traveled in. (*See* Pontjeris

Dep. 25.) The only facts relevant to the *Steagald*-derived reasonableness inquiry are those

"within the knowledge of the law enforcement agents." *Valdez,* 172 F.3d at 1225. Thus,

plaintiff's unsupported assertion that the car in the driveway was a 1976 model with a

handicap license plate has no impact on the reasonableness of Pontjeris' belief that the

car in the driveway and the car described by his informants were one and the same.

Another one of plaintiff's purported "factual disputes" fails for a similar reason.

Plaintiff claims that Pontjeris had unreliable and contradictory information on Charles'

whereabouts and therefore no reasonable basis to believe he was a resident of 1775

Broadacre. (Pl.'s Response 8.) Again, this is not an attempt to establish a dispute of fact,

but simply an argument that, given the facts, Pontjeris' conduct was unreasonable. It is

also unpersuasive. The fact that Pontjeris had more than one lead is not reason enough

for the court to say that Pontjeris was unreasonable in weighing the credibility of his

informants, matching up information with other tips he had collected, and eventually

making a judgment call that Charles lived at 1775 Broadacre on August 20, 2002. The

information an officer has regarding the location of a suspect's residence or his physical

presence at a residence does not need to be conclusive to the point where all other

possibilities are excluded; the officer's assessment of the information he has, and the actions taken in reliance thereon, simply must be reasonable. *Edmonds*, 52 F.3d at 1248.

Finally, plaintiff contends that there is a genuine issue of material fact as to whether there was any indication of "foul play" at 1775 Broadacre on August 20, 2002. (Pl.'s Response 8.) However, whether there were signs of "foul play," which plaintiff suggests would come in the form of broken windows, signs of forced entry, cries for help, or 911 emergency calls from the residence, is not material to this dispute. In order to even get to the point where this argument would be relevant, the court must first accept plaintiff's assertion that Pontjeris could not have reasonably believed that Charles lived at 1775 Broadacre, and that the entry into plaintiff's home was therefore warrantless and unreasonable absent the existence of exigent circumstances. The court would have to further accept plaintiff's argument that indications of foul play inside the home is the only possible exigent circumstance that would call for such a warrantless entry into plaintiff's home in this case. At that point, the court could consider plaintiff's argument that there is a genuine issue of material fact as to whether or not there were any signs of foul play at 1775 Broadacre on August 20, 2002. However, the court need not entertain this argument because even assuming there were no indications of foul play, the court's analysis would be the same. Pontjeris' belief that Charles was a resident of 1775 Broadacre and that he was present on August 20, 2002, was objectively reasonable under the circumstances, and therefore the arrest warrant carried with it the implicit ability to enter into 1775 Broadacre to execute the warrant.

*b. Failure to properly knock-and-announce*

The court has now established that the arrest warrant for Charles Romaine justified Pontjeris' entry into 1775 Broadacre on August 20, 2002. Thus, the only allegation remaining that could support plaintiff's claim that Pontjeris violated her Fourth and Fourteenth Amendment rights is plaintiff's argument that Pontjeris did not properly knock and announce before he entered her residence.

The requirement that police officers executing a warrant knock and announce their identity and intention before entering is built into the Fourth Amendment's prohibition on unreasonable searches and seizures. *Wilson,* 514 U.S. at 934; *United States v. Espinoza,* 256 F.3d 718, 723 (7th Cir. 2001). "One purpose of the rule is to protect the privacy of the occupants and to give them an opportunity to prepare for the agents' entry, allowing them to pull on clothes or get out of bed." *Green v. Butler,* 420 F.3d 689, 698 (7th Cir. 2005). Another function of the knock-and-announce rule is to prevent danger to officers who, "in entering unannounced, expose[] themselves to the risk that an occupant would mistake their entry for an invasion and reasonably would take defensive measures to protect himself from the perceived, though mistaken, threat." *Id.* Finally, the rule is a "significant safeguard to the occupants of the home." *Id.*

Pontjeris testified that he knocked on the front door and said "Porter County Sheriff's Department" at least two times, with intermittent pauses, before he entered the house. (Pontjeris Dep. 27-28.) Pontjeris also inquired whether Jackie was there. (Pontjeris Dep. 28-29; Narrative 6.) Pontjeris described his actions as being "very loud." (Pontjeris

19

Dep. 29.) Plaintiff urges us to infer from this testimony that Pontjeris failed to announce his purpose for being at the residence. The court notes that the parties have not submitted deposition testimony where Pontjeris answered the question "Did you state your purpose?" Nonetheless, because this is defendants' motion for summary judgment, the court will entertain plaintiff's argument anyway and infer from Pontjeris' testimony, for purposes of this motion, that Pontjeris did not announce his purpose before entering plaintiff's residence.

However, the court's analysis does not stop there. As stated by the Supreme Court, "[t]he Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law-enforcement interests . . . . [T]he common-law principle of announcement was never stated as an inflexible rule requiring announcement under all circumstances." *Wilson,* 514 U.S. at 934. Accordingly, the Supreme Court has recognized that exigent circumstances excusing compliance with the knock-and-announce requirement may include circumstances presenting a danger that the officer's purposes will be thwarted, such as the imminent destruction of evidence, hot pursuit of a fleeing felon, and the need to prevent a suspect's escape. *Minnesota v. Olson,* 495 U.S. 91, 100 (1990); *see also United States v. Smith,* 386 F.3d 753, 759 (6th Cir. 2004) (knock and announce requirement excused when "officers have a justified belief that those within are aware of their presence and are engaged in escape"). For example, in *United States v. Bailey,* the Seventh Circuit found that "the knowledge that drugs were being sold by the occupants and that

20

the occupants might swallow drugs kept in their mouth, the sounds of running and shuffling noises, and the fact that the officers waited several seconds before concluding that no one was coming to the door" justified the officers' entry without an announcement of their purpose. 136 F.3d 1160, 1165 (7th Cir. 1998). The Court of Appeals for the District of Columbia came to a similar conclusion in *United States v. James*, 764 F.2d 885, 888 (D.C. Cir. 1985). In that case, the police had knocked and announced their presence, but not their purpose, repeatedly. Shortly thereafter they heard a noise inside the house. The officers, believing that the sound could be that of the house's inhabitants moving to destroy evidence, entered the house, still with no announcement of their purpose. The Court of Appeals held that the officers could have reasonably interpreted the noise from inside the house as an indication that the inhabitants "are well aware of the purpose of the police visit and are moving to destroy evidence." *Id.*

In this case, an objectively reasonably officer could have believed, like Pontjeris did, that his mode of entrance was warranted because Charles, who he believed was present and a resident of 1775 Broadacre, could have been attempting to flee. Pontjeris testified that he saw a light on upstairs in the house. (Pontjeris dep. 32-33.) Pontjeris further testified that after he knocked and yelled "Porter County Sheriff's Department," he heard a noise upstairs. (Pontjeris dep. 33.) Pontjeris considered whether "the fugitive is upstairs and he doesn't want to answer the door" because "nobody is answering and I hear somebody upstairs." (Pontjeris dep. 30, 31.) Then Pontjeris "told [a fellow officer] to

21

go around to the back just in case somebody runs out the back." (Pontjeris dep. 30.)

Additionally, Charles' believed mode of transportation, and therefore available means of

escape, was sitting in the driveway. *See United States v. Williams,* 573 F.2d 348, 350 (5th

Cir. 1978) (finding agent justified in forcing open door to house where agent twice

received no response to knocks on the door and suspect's car, "a ready means of rapid

escape," was parked in yard). Further, Pontjeris had received information the day before

that Charles was looking for money and had plans to flee the area. (Narrative 2.)

Defendants have therefore met their initial burden with respect to their motion for

summary judgment as to this issue by establishing that the undisputed facts, read most

favorably to plaintiff, do not support plaintiff's theory that Pontjeris illegally entered her

home without following proper knock-and-announce protocol, even assuming that he

failed to announce his purpose before entering plaintiff's home.

The burden therefore shifts to plaintiff to show that there are factual issues in

dispute that should warrant a trial on the merits of her knock-and-announce claim.

Plaintiff makes two arguments to this end. First, plaintiff argues that "there is a factual

dispute as to whether or not Pontjeris did in fact announce his purpose." (Pl.'s Response

11.) However, this "dispute" is not material to this case. The court assumed for purposes

of this motion that Pontjeris did *not* announce his purpose, and still came to the

conclusion that he acted reasonably under the circumstances and did not commit a

constitutional violation. Second, plaintiff argues that "there is ambiguity as to what his

purpose was," and that "[t]his fact raises the alternative theory that Pontjeris had no

22

valid warrant to enter the house if he announced that he was looking for Jackie, the

plaintiff's sister, for whom he had no warrant." (Pl.'s Response 11.) The court cannot see

how this alleged ambiguity creates an issue warranting trial on whether Pontjeris'

knock-and-announce procedure was constitutional. Instead, plaintiff's comment seems

to be a half-hearted argument that the entry was not made pursuant to a valid warrant

for Jackie and was therefore unconstitutional, but plaintiff fails to develop this theory

any further than the substance of the above-quoted remarks. (*See* Pl.'s Response 9, 11-13.)

Even if Pontjeris did have some hidden motive for being at the home, plaintiff has not

shown that this would have any bearing on whether Pontjeris followed proper knock-

and-announce protocol or committed any other constitutional violation.

Plaintiff has therefore failed to established a genuine issue of material fact

warranting trial on her knock-and-announce theory or, as explained in detail above, on

her warrantless entry theory. The court therefore determines that the facts presented,

read in a light most favorable to plaintiff, establish no federal constitutional violation by

Officer Pontjeris. Accordingly, summary judgment in favor of defendant Pontjeris, in his

individual capacity, with regard to plaintiff's federal constitutional claims is

appropriate.[1]

---

[1] In their motion for summary judgment, defendants raise the issues of both
qualified and absolute immunity with respect to defendant Pontjeris. At the outset, the
court notes that it is somewhat of an unnecessary academic exercise to entertain these
issues at this point, since they will have no effect on the outcome of this case. Indeed,
for reasons set forth in detail above, Pontjeris' actions do not constitute a constitutional
deprivation, and therefore there are no acts which Pontjeris could be qualifiedly or
absolutely immune from. Nevertheless, the court is willing to engage in intellectual

2. *Claims against Porter County, Sheriff Reynolds in his official capacity, and Officer Pontjeris in his official capacity*

Next the court considers plaintiff's claims against Porter County and Sheriff

Reynolds and Officer Pontjeris in their official capacities. A § 1983 claim made against an

---

aerobics in order to briefly address immunity here, since the parties themselves so fervently devoted portions of their briefs to such matters.

Absolute or "quasi-judicial" immunity does not protect officers from suits based on the manner in which a judicial order, such as a warrant, is carried out, and therefore would not apply to Pontjeris' methods of attempting to effectuate the arrest warrant this case. *Richman v. Sheahan*, 270 F.3d 430, 436 (7th Cir. 2001). Qualified immunity, however, presents a slightly more complicated question. Qualified immunity protects government officials performing discretionary functions, so long as the officials could have reasonably thought that they were acting constitutionally. *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987); *Leaf v. Shelnutt*, 400 F.3d 1070, 1079 (7th Cir. 2005). "In determining whether qualified immunity will apply to shield a defendant from suit, a court undertakes a two-part inquiry to assess the objective reasonableness of an official's conduct, as measured by reference to clearly established law." *Leaf*, 400 F.2d at 1070 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) and *Saucier*, 533 U.S. 194, 200 (2001)) (internal citations and quotation marks omitted). The court must first consider a threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. If the facts do make out a constitutional violation, then a court must go on to determine whether the plaintiff's constitutional rights were clearly established at the time of the alleged violation such that a reasonable officer would know that his actions were unlawful at the time he acted. *Id.*; *Kerr v. Farrey*, 95 F.3d 472, 480 (7th Cir. 1996).

Assuming, for the sake of argument, that the court could ignore all of the discovery that has ensued in this case and determine that plaintiff's bare allegations do establish a constitutional violation, the court thinks it is clear from the foregoing analysis that an objectively reasonable officer would not have believed that Pontjeris' actions were unconstitutional given the circumstances. (Indeed, the court itself has just decided that Pontjeris' actions were constitutional; it would be rather counterproductive to say that a reasonable officer should have nevertheless realized that what Pontjeris was doing was unconstitutional.) For this reason, if the court had visited the question of qualified immunity, immunity would likely have been granted, a decision which would not have changed the court's decision to grant Pontjeris summary judgment on the federal claims made against him.

individual in his official capacity is treated as a suit against the government entity of

which he is an agent. *Richman,* 270 F.3d at 439. Thus, plaintiff's claims against Sheriff

Reynolds and Officer Pontjeris in their official capacities are treated as claims against the

county itself.

In *Monell,* the Supreme Court recognized that local governmental entities, such as

the defendants in this case, can indeed be held liable under § 1983. 436 U.S. at 691.

However, in reaching that decision, the Court also made clear that such municipal

liability is not available under a theory of respondeat superior alone, but rather only

when a *policy or custom* of that municipality causes a constitutional injury. *Id.* at 691-92. A

§ 1983 plaintiff can meet *Monell's* requirements by establishing that the governmental

entity's unconstitutional policy or custom took one of three forms: "(1) an express policy

that, when enforced, causes a constitutional deprivation; (2) a widespread practice that,

although not authorized by written law or express municipal policy, is so permanent

and well settled as to constitute a 'custom or usage' with the force of law; or (3) an

allegation that the constitutional injury was caused by a person with final policy-making

authority." *Palmer v. Marion County,* 327 F.3d 588, 594-95 (7th Cir. 2003).

Plaintiff rests on the first option, claiming that Officer Pontjeris acted in

accordance with a Porter County policy that is contrary to federal law. (Pl.'s Response

17.) However, because, as explained in detail above, Pontjeris' actions *did not* cause a

constitutional deprivation, the court cannot find that a Porter County policy, when

enforced, *did* cause a constitutional deprivation. There is no constitutional injury to

25

ground plaintiff's claim for municipal liability under § 1983. Summary judgment in favor of Porter County and Sheriff Reynolds and Officer Pontjeris in their official capacities with regard to plaintiff's federal constitutional claims is therefore proper.

### B. State constitutional claims

Finally, plaintiff alleges that Pontjeris' actions violated her rights under Article I, § 11 of the constitution of the state of Indiana, and that the other remaining defendants are liable for his actions. (Pl.'s Compl. ¶ 15.) In response, defendants argue that the Indiana Supreme Court does not recognize a private right of action for state constitutional violations. (Defs.' Mot. Summ. J. ¶ 7.) Indeed, the issue of whether a private right of action exists for violations of the Indiana constitution is presently before the Indiana Supreme Court in the form of a certified question, which was presented by *Cantrell v. Morris,* No. 2:04CV364, 2005 WL 1159416, at **8-9 (N.D. Ind. May 17, 2005), *certified question accepted,* No. 94-S-00-0505-CQ-00243 (7th Cir. June 21, 2005). As of the date of this order, the Indiana Supreme Court has not ruled on the certified question.

Although it is not clear at this time whether the Indiana Supreme Court will recognize a private right of action for violations of the constitution of that state, or what the elements of an illegal search and seizure claim would be if it were recognized, the court can only presume that the standards for recovery would be similar, if not analogous, to those that have been established for federal constitutional claims. Accordingly, the court believes that the above analysis relating to plaintiff's claim under

the United States Constitution would hold true with respect to plaintiff's state constitutional claim as well. In other words, summary judgment is granted to defendants on the state constitutional claim for the same reasons as above: because plaintiff has failed to show that a genuine issue of material fact exists warranting trial on plaintiff's claim that Pontjeris illegally entered her home without a warrant and without following proper knock-and-announce protocol.

However, the court will withhold final judgment in this case until the certified question presented in *Cantrell* is decided by the Indiana Supreme Court, as it may become evident from that decision that this court was wrong to presume that Indiana state constitutional claims should be reviewed according to standards similar to those employed for federal constitutional claims. Once *Cantrell* is decided, the court will either enter final judgment on its own motion or order additional briefing if the court deems necessary.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (docket # 20) is **GRANTED** in favor of defendants Porter County, Indiana; David Reynolds, in his individual and official capacities; Brian Geese, in his individual and official capacities; and Dean Pontjeris, in his individual and official capacities.

The court **WITHHOLDS FINAL JUDGMENT** in this case in light of the Indiana Supreme Court's pending resolution of the certified question presented in *Cantrell v. Morris*.

**SO ORDERED.**

**ENTER:** December 2, 2005

s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT